```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -X
                                    :
UNITED STATES OF AMERICA            :
                                    :     INFORMATION
    - v -                           :
                                    :     21 Cr. 638   (KMK)
ALEX THOMPSON,                      :
                                    :
               Defendant.           :
                                    :
- - - - - - - - - - - - - - - - - -X
```

## COUNT ONE

(Conspiracy to Commit Wire Fraud)

The United States Attorney charges:

### OVERVIEW

1.  From approximately May 2018 to November 2020, ALEX THOMPSON, the defendant, was an employee of a construction company with its principal office in Purchase, New York ("Victim-1"). THOMPSON's responsibilities as an employee of Victim-1 included budgeting for construction projects, soliciting bids from subcontractors for the performance of construction work, awarding contracts for that work, and approving invoices submitted by the subcontractors for work performed.

2.  From at least June 2019 to November 2020, ALEX THOMPSON, the defendant, and another individual ("CC-1") planned and executed a fraudulent scheme to deprive Victim-1 of money, which proceeded in two primary parts:

a.   First, THOMPSON and CC-1 created false invoices for work purportedly done by subcontractors of Victim-1, without the knowledge of those subcontractors, caused Vicitm-1 to issue checks for payment to those subcontractors, and then deposited the majority of those checks in a bank account controlled by THOMPSON and CC-1 (the "Stolen Check Scheme").

b.   Second, THOMPSON conspired with a subcontractor of Vicitm-1 ("CC-2") to cause Victim-1 to pay inflated prices for work done by CC-2, in exchange for kickbacks paid to THOMPSON, the majority of which were then deposited in a bank account controlled by THOMPSON and CC-1 (the "Kickback Scheme").

**SCHEME TO DEFRAUD**

3.   In or around August 2019, ALEX THOMPSON, the defendant, and CC-1 opened a business bank account in New Jersey ("Bank Account-1") at a particular bank ("Bank-1") for a New Jersey limited liability company ("Company-1") that had previously been created by THOMPSON and CC-1.

4.   Between approximately July 2019 and August 2020, CC-1 registered with the State of New Jersey Division of Revenue five alternative names for Company-1—specifically, names similar to four subcontractors of Vicitm-1 (each a "Subcontractor" and together the "Subcontractors"), as well as a name similar to

2

that of Victim-1.  CC-1 then caused Bank-1 to add to Bank Account-1 "doing business as" designations for Company-1 in those five names.

### STOLEN CHECK SCHEME

5. Between approximately September 2019 and November 2020, without the knowledge of the Subcontractors, ALEX THOMPSON, the defendant, and CC-1 created false invoices on the letterhead of the Subcontractors for work purportedly (but not actually) done by the Subcontractors.  THOMPSON submitted each of those false invoices for payment to Victim-1, and, after Victim-1 issued a check for payment, THOMPSON collected the check with the promise to deliver the check to the appropriate Subcontractor.

6. ALEX THOMPSON, the defendant, did not deliver the checks to the Subcontractors.  Instead, THOMPSON deposited or caused CC-1 to deposit each of those checks in Bank Account-1, or (on one occasion) caused CC-1 to cash two checks.  In total, THOMPSON and CC-1 deposited or cashed $92,390.93 in checks from Victim-1 made out to the Subcontractors.  On one or more occasion, THOMPSON or CC-1 deposited one of those checks into Bank Account-1, which caused an interstate wire transfer from the New York-based account of Vicitm-1 to Bank Account-1.

7. ALEX THOMPSON, the defendant, also took without

permission a check in the amount of $7,953.38 made out to Victim-1 from a Connecticut-based regional utility company. On or about October 1, 2020, THOMPSON deposited or caused CC-1 to deposit that check in Bank Account-1.

**KICKBACK SCHEME**

8. In approximately mid-2019, a representative of CC-2, a paving company which had put in bids to do work on projects commissioned by Vicitm-1, approached ALEX THOMPSON, the defendant, and asked in sum and substance whether THOMPSON would assist CC-2 in charging inflated prices to Victim-1 for a fee. THOMPSON agreed to do so.

9. ALEX THOMPSON, the defendant, selected CC-2 from a pool of bidders for various jobs commissioned by Victim-1, on the basis of quotes submitted by CC-2.

10. On at least three occasions between July 2019 and September 2020, after being selected as a subcontractor for a particular job, CC-2 put in change orders for those jobs which overstated the value of the work to be performed. ALEX THOMPSON, the defendant, knew the change orders submitted by CC-2 overstated the value of the work to be performed but nonetheless approved the change orders. As a result, CC-2 submitted invoices to Victim-1 that overstated the value of the work performed, and Vicitm-1 paid those inflated invoices.

11.   CC-2 paid ALEX THOMPSON, the defendant, kickbacks, in exchange for THOMPSON approving the inflated change orders.  Specifically, in August and September 2020, CC-2 remitted two checks to THOMPSON totaling $17,100.  The checks were "Paid to the order of" Victim-1, but CC-2 provided these checks to THOMPSON with the understanding that THOMPSON would convert them for his personal use.  THOMPSON then deposited or caused CC-1 to deposit the checks in Bank Account-1.  CC-2 also paved the driveway of THOMPSON's home for free (a service with the value of at least $5,000).

## **STATUTORY ALLEGATIONS**

12.   From in or about June 2019 to in or about November 2020, in the Southern District of New York and elsewhere, ALEX THOMPSON, the defendant, and others known and unknown, willfully and knowingly, did combine, conspire, confederate, and agree together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

13.   It was a part and object of the conspiracy that ALEX THOMPSON, the defendant, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money or property by means of false and fraudulent pretenses,

representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate or foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

(Title 18, United States Code, Section 1349.)

## FORFEITURE ALLEGATION

14. As the result of committing the conspiracy to commit wire fraud offense in violation of Title 18, United States Code, Sections 1343 and 1349, as charged in Count One of this Information, ALEX THOMPSON, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offense.

### Substitute Asset Provision

15. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited

with, a third person;

        c.  has been placed beyond the jurisdiction of the Court;

        d.  has been substantially diminished in value; or

        e.  has been comingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

    (Title 18, United States Code, Section 981(a)(1)(C);
       Title 21, United States Code, Section 853(p);
       Title 28, United States Code, Section 2461.)

_____
DAMIAN WILLIAMS
United States Attorney